**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     ROSEMARY CUSATO, | : | |
| | : | Bky. No. 00-34338 ELF |
|     Debtor. | : | |
| | : | |
| ROSEMARY CUSATO, | : | |
|     Plaintiff, | : | |
| v. | : | |
| SPRINGLEAF FINANCIAL, INC., | : | |
|     Defendant. | : | Adv. No. 12-0429 |

# M E M O R A N D U M

## I. INTRODUCTION

In January 2012, Plaintiff Rosemary Cusato ("the Debtor") settled on a reverse mortgage loan on her residence. Prior to the closing, Defendant Springleaf Financial, Inc. ("Springleaf")[1] demanded payment from the Debtor as a condition of marking satisfied its lien of record against the property. In order to close the transaction, the Debtor paid Springleaf $13,104.45 from the loan proceeds.

In this adversary proceeding, the Debtor asserts that Springleaf's lien was avoided in her

---

[1] In its Answer to the Debtor's Complaint in this adversary proceeding, Springleaf states that it was misidentified in the Complaint and that its correct name is "Springfield Financial Services of Pennsylvania, Inc."

1

bankruptcy case and that the demand for payment prior to the closing of the reverse mortgage transaction constituted an act to collect an unsecured debt in violation of the chapter 7 bankruptcy discharge that she received in 2005 and the statutory injunction arising therefrom. See 11 U.S.C. §524(a)(2).

Before the court is Springleaf's motion for summary judgment ("the Motion").

I conclude that Springleaf's demand for payment was not an attempt to collect a debt "as a personal liability of the debtor," enjoined by §524(a)(2), but was merely an attempt to enforce a lien against the Debtor's property that passed through her bankruptcy case unaffected. I reach this result because I conclude that the Springleaf lien was not avoided during the Debtor's bankruptcy case. Consequently, Springleaf did not violate the discharge injunction. The Motion will be granted and summary judgment will be entered in Springleaf's favor.

## II. FACTUAL AND PROCEDURAL HISTORY

### A.

The facts in this matter are undisputed.

In February 1999, American General Finance, Inc. ("American General") extended a loan to the Debtor that was secured by a second mortgage on her residence, 2334 South Colorado Street, Philadelphia, Pa ("the Property"). American General is the predecessor of Springleaf.[2]

On November 16, 2000, the Debtor filed a chapter 13 bankruptcy case. On November 29, 2000, the Debtor filed an adversary complaint in which she requested that the court avoid

---

[2] Springleaf states that it was "formerly known" as American General. (Springleaf Ex. 7, Decl. of Melody Smith ¶4). In this Memorandum, I will use both names interchangeably.

American General's second mortgage lien.  (See Adv. No. 00-899) ("the Prior Adversary Proceeding").

In her adversary complaint in the Prior Adversary Proceeding, the Debtor alleged that American General's loan in the amount of $11,536.54 was "totally undersecured" and "subject to avoidance pursuant to 11 U.S.C. section 506(a), as interpreted by In re McDonald, 205 F.3d 606 (3d Cir. 2000)."  (Springleaf Ex. 4, at ¶¶ 3, 6).

American General filed a proof of claim on December 4, 2000 in the amount of $11,773.08, an amount very close to the amount alleged in the Debtor's complaint in the Prior Adversary Proceeding.  However, American General did not answer the adversary complaint.  Upon the Debtor's motion for default judgment, and by order dated March 16, 2001, the court entered an order (hereafter "the March 2001 Order") stating:

> AND NOW, this 16 day of March, 2001, upon consideration of the within Complaint and the failure of the Defendant to plead any viable defenses thereto, it is hereby ORDERED that the claim of the Defendant, AMERICAN GENERAL FINANCE, INC., **is classified as a totally unsecured claim in this bankruptcy case**.

(Springleaf Ex. 6) (emphasis added).  Following the entry of the March 2001 Order, American General's claim was reclassified on the claims register as an unsecured claim.

The docket in the "main" bankruptcy case reflects that after the entry of the March 2001 Order, the hearing on confirmation of the Debtor's chapter 13 plan was continued twenty-seven (27) times over a period of approximately three and one-half years (3 ½) years.[3]  Nothing in the

---

[3] I may take judicial notice of the docket entries in this case.  See, e.g., In re G&M Enterprises, Inc., 2013 WL 121581, at *5 n.20 (Bankr. E.D. Pa. Jan. 9, 2013); In re Omega Optical, Inc., 476 B.R. 157, 159 n.2 (Bankr. E.D. Pa. 2012).

3

present record explains the basis for this extraordinary delay in case administration. The Debtor's chapter 13 plan was never confirmed. Finally, on September 27, 2004, the Debtor filed an "election," converting the case from chapter 13 to chapter 7. See Fed. R. Bankr. P. 1017(f) (chapter 13 case may be converted to chapter 7 without court order under 11 U.S.C. §1307(a) by the filing of a notice of conversion).

On January 11, 2005, the court entered a chapter 7 discharge order. The case was closed on April 11, 2005.

More than six (6) years later, in September 2011, the holder of the first mortgage on the Property, American Home Mortgage Servicing, Inc. ("AHMSI"), filed a complaint in foreclosure against the Debtor in the Court of Common Pleas, Philadelphia County, presumably based upon a mortgage payment delinquency. (See Springleaf Ex.11). To avert the threatened foreclosure, the Debtor applied for a reverse mortgage loan with Urban Financial Group ("Urban"). (Debtor's Affid. ¶ 15). The loan application was approved.

In response to a request for a payoff statement made by the title agent handling the reverse mortgage loan closing, Springleaf sent the title agent a letter stating that the payoff amount on the outstanding second mortgage loan was $13,104.45, good through January 22, 2012. (Springleaf Ex. 7, Decl. of Melody Smith ¶4). The payoff letter appears to be Springleaf's first collection effort of any kind after the entry of the Debtor's chapter 7 discharge. (See Debtor's Affid. ¶ 14).

After Urban informed her of the outstanding Springleaf obligation, the Debtor advised Urban that she "vigorously disputed" the claim and "attempted to call" Springleaf's office. (Id. at ¶¶ 18-19). In the end, however, she permitted the Springleaf loan to be paid off at the reverse-

4

mortgage closing because Urban advised her that the loan could not close without the payment and, without the loan, she considered her home to be in jeopardy of foreclosure by AHMSI. (Id. ¶¶ 20-21).

**B.**

On April 21, 2012, the Debtor filed a motion to reopen her chapter 7 bankruptcy case for the purpose of filing the present adversary matter to recover the sums paid to the Defendant. On May 30, 2012, there being no opposition,[4] the court granted the motion and entered an order reopening the bankruptcy case. That same day, the Debtor initiated this adversary matter by filing a complaint. Springleaf filed its Answer on June 29, 2012. Springleaf filed the Motion on November 19, 2012. (Adv. No. 12-0429, Doc. #'s 17, 18). The Debtor timely filed her response to the Motion on December 2, 2012. (Adv. No. 12-0429, Doc. #'s 21, 22). The matter is ready for disposition.

### III.  LEGAL STANDARD - SUMMARY JUDGMENT

A moving party is entitled to summary judgment by demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 323 (3d Cir. 2012).

Under Rule 56, the moving party is entitled to judgment as a matter of law if the court

---

[4] The court docket reflects that Springleaf was served at the address listed on the creditor mailing matrix in the "main" bankruptcy case.

finds that the motion alleges facts which, if proven at trial, would require a directed verdict in favor of the movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." United States v. Donovan, 661 F.3d 174, 185 (3d Cir. 2011) (quoting El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007)). If the moving party meets its initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).

The court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. Anderson, 477 U.S. at 249. A genuine issue of material fact is one in which the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. Id. at 248. The court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). Thus, if it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court shall enter judgment accordingly in that party's favor. Anderson, 477 U.S. at 252.

# IV. DISCUSSION

### A.

The Debtor contends that Springleaf's conduct violated the discharge injunction set forth in 11 U.S.C. §524(a)(2). Section 524(a)(2) states:

> (a) A discharge in a case under this title —
>
> . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived
> . . . .

The purpose of the statutory injunction "is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts." In re Armstead, 1997 WL 860677, at *3 (Bankr. E.D. Pa. Nov. 7, 1997 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 365–66 (1977)); accord In re Cordero, 2012 WL 5457218, at *5 (Bankr. D.P.R. Oct. 23, 2012).

For present purposes, the key phrase in §524(a)(2) is "as a personal liability of the debtor."

A secured creditor's demand for payment as a condition of satisfying a valid lien on property is not an act to collect a debt "as a personal liability of the debtor" prohibited by §524(a)(2). This is because "valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." Estate of Lellock v. Prudential Ins. Co. of America, 811 F.2d 186, 189 (3d Cir. 1987). Secured creditors "are not prevented from postdischarge enforcement of a valid lien on property of the debtor . . . if the lien was not

avoided under the Code." 4 Collier on Bankruptcy ¶524.02[2][d] (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2012); see also Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (noting that "a discharge extinguishes only the personal liability of the debtor . . . a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy") (internal quotation marks and citations omitted); Matter of Paeplow, 972 F.2d 730, 735 (7th Cir. 1992) (§524(a)(2) does not bar creditor actions to enforce a lien against property of the debtor); In re Scotto-DiClemente, 459 B.R. 558, 565 (Bankr. D.N.J. 2011) ("A debtor's chapter 7 discharge does not deprive a mortgagee of its right to collect on its debt in rem."); In re Burkett, 295 B.R. 776, 784 (Bankr. W.D. Pa. 2003) ("Section 524(a)(2) of the Bankruptcy Code does not prohibit the holder of an unavoided lien from enforcing it in a subsequent in rem action").

Here, if American General's mortgage lien on the Property was avoided in the Prior Adversary Proceeding, then American General emerged from the bankruptcy case with only an in personam claim against the Debtor that was subject to the §524(a)(2) injunction. If so, the statutory injunction presumptively would apply, see National Capital Mgt. v. Gammage-Lewis, 2012 WL 3561785, at *1 (E.D.NC. Aug. 14, 2012) (repossession of automobile after entry of discharge in case in which creditor's lien was avoided violated §524(a)(2)), and the next issue would be whether Springleaf's conduct violated the statutory injunction.

On the other hand, if Springleaf is correct in its contention that the March 2001 Order, which stated that the claim is "totally unsecured," did not have the effect of avoiding the second mortgage lien on the Property, or if, for any other reason, the lien was not avoided when the bankruptcy case was closed in 2005, then Springleaf undoubtedly also is correct, as a matter of law, that it did not violate 11 U.S.C. §524(a)(2) when it sent the payoff letter to the title agent

8

handling the closing of the Debtor's reverse-mortgage loan transaction with Urban.

Against this statutory backdrop, Springleaf bases its request for summary judgment on three (3) arguments:

>(1) the March 2001 Order did not avoid its lien;
>
>(2) even if its lien was avoided by the entry of the March 2001 Order, the subsequent conversion of the bankruptcy case from chapter 13 to chapter 7 reinstated the lien pursuant to 11 U.S.C. §348(f)(1); and
>
>(3) the Debtor's payment to Springleaf for satisfaction of the recorded mortgage lien, after having consulted with counsel, triggers the application of the "voluntary payment doctrine," barring her §524(a)(2) claim.

**B.**

**1.**

The first (and, as it turns out, the only) issue I must reach to decide the Motion is whether the March 2001 Order, which stated that the claim is "totally unsecured," had the effect of voiding the lien held by American Finance. I conclude that it did not.[5]

To explain why I reach this conclusion, it is helpful to place the March 2001 Order in its legal context. To do so, I must briefly discuss three (3) pertinent sections of the Bankruptcy Code, 11 U.S.C. §§506(a), 506(d) and 1322(b), and related case law.

Section 506(a)(1) provides, in pertinent part, that a creditor's allowed claim that is secured by a lien on estate property:

---

[5] Consequently, I do not consider the second and third arguments Springleaf has raised in support of the Motion.

9

> is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Thus, §506(a) provides for the bifurcation of an "undersecured" claim into allowed secured and allowed unsecured claims.

The next pertinent statutory provision is 11 U.S.C. §506(d), which provides, subject to certain exceptions not relevant here, that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

Finally, 11 U.S.C. §1322(b)(2) provides that a plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

Theoretically, it would not be unreasonable to read subsections (a) and (d) of §506 to work together as two (2) steps of a single process, with §506(a) authorizing the bifurcation of an undersecured claim and §506(d) voiding the holder's lien to the extent of the unsecured component of the claim. However, in Dewsnup v. Timm, 502 U.S. 410, 417 (1992), the Supreme Court held that §506(d), by itself, does not authorize the voiding (or "stripping") of an undersecured lien based on a §506(a) valuation. Rather, the Court construed §506(d) to avoid liens only to the extent that the underlying claim is disallowed under 11 U.S.C. §502(b). See, e.g., In re Gerardin, 447 B.R. 342, 345 (Bankr. S.D. Fla. 2011).

Famously, however, the Dewsnup Court limited its holding to chapter 7 cases, see 502 U.S. at 417 n.3, and, since 1992, the lower courts have not extended its restriction on lien stripping to the reorganization chapters of the Bankruptcy Code. See In re Woolsey, 696 F.3d

10

1266, 1276 (10th Cir. 2012); In re Heritage Highgate, Inc., 679 F.3d 132, 144 (3d Cir. 2012); In re Enewally, 368 F.3d 1165, 1169-70 (9th Cir. 2004); In re Bartee, 212 F.3d 277, 291 n.21 (5th Cir. 2000); In re Okisisi, 451 B.R. 90, 93-94 (Bankr. D. Nev. 2011) (collecting cases); Rosemary Williams, Special Commentary, Bifurcation and Avoidance, or "Stripping," of Liens, Security Interests, and Encumbrances Held by Undersecured Creditors by Rehabilitating and Liquidating Debtors in Bankruptcy, 158 ALR Fed.1, §§8, 9[a] (Westlaw 2013) (same).

After Dewsnup, most, but not all, courts have grounded the authority to strip an undersecured lien in a chapter 13 debtor's power to modify the rights of a secured creditor through the plan pursuant to §1322(b)(2). Under this approach, strictly speaking, only the confirmation of a plan that invokes §506(a) and (d) to modify the rights of a secured creditor (and not a stand-alone court order, obtained in an adversary proceeding or contested matter) serves to strip a lien. See In re Ryan, 2012 WL 4959632, at *5 (Bankr. N.D. Ill. Oct. 17, 2012); In re Pierce, 2012 WL 1903263, at *3 (Bankr. E.D. Va. May 24, 2012); In re Scantling, 465 B.R. 671, 677-78 (Bankr. M.D. Fla. 2012); In re Orkwis, 457 B.R. 243, 248-49 (Bankr. E.D.N.Y. 2011); In re Pearson, 214 B.R. 156, 163-64 (Bankr. N.D. Ohio 1997); In re McDonough, 166 B.R. 9, 13 (Bankr. D. Mass. 1994); see also Woolsey, 696 F.3d at 1278-79 (dictum). On the other hand, a few courts have accepted the Supreme Court's invitation to limit Dewsnup to chapter 7 cases and have held that, in a reorganization case, a direct action lies under §506(d) to avoid an undersecured lien (provided that modification of the secured creditor's rights is not otherwise restricted by other provisions in chapter 13). See In re Weinstein, 227 B.R. 284, 292 & n.8 (B.A.P. 9th Cir. 1998); In re Monk, 2011 WL 212831, at *4 n.4 (Bankr. D. Or. Jan. 21, 2011); In re Dever, 164 B.R. 132, 145-46 (Bankr. C.D. Cal. 1994).

11

In <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 325-26 (1993), the Supreme Court held that §1322(b)(2), which prohibits modification of a claim secured "only by a security interest in real property that is the debtor's principal residence," bars bifurcation of such a claim into secured and unsecured claims under §506(a).  The <u>Nobelman</u> decision cut off the use of §1322(b)(2) modification power in tandem with §506(a) and (d) to strip the liens of the holders of such claims that are at least partially secured within the meaning of 11 U.S.C. §506(a)..

Finally, in <u>McDonald</u>, the Third Circuit held that the anti-modification clause of §1322(b)(2), as construed in <u>Nobelman</u>, applies **only** if a claim is at least partially secured.  See <u>McDonald</u>, 205 F.3d at 611 & 614.  Thus, if a claim is entirely undersecured (<u>i.e.</u>, totally unsecured after the application of §506(a)), it is not protected from being modified (and its lien stripped) by a chapter 13 debtor's plan.  <u>Id.</u> at 610-11; <u>accord</u> <u>In re Zimmer</u>, 313 F.3d 1220, 1227 (9th Cir. 2002); <u>In re Lane</u>, 280 F.3d 663, 667-69 (6th Cir. 2002); <u>In re Pond</u>, 252 F.3d 122, 126 (2d Cir. 2001); <u>In re Tanner</u>, 217 F.3d 1357, 1359-60 (11th Cir. 2000); <u>In re Bartee</u>, 212 F.3d 277, 295 (5th Cir. 2000).

The March 2001 Order purported to exercise the Debtor's right to avoid an entirely undersecured mortgage lien, consistent with the Third Circuit's <u>McDonald</u> decision.[6]

---

[6] Our Court of Appeals has never explicitly held whether lien stripping in a reorganization chapter is grounded solely in the plan confirmation process.  In <u>Heritage Highgate</u>, the court stated that "<u>Dewsnup's</u> holding should not be imported into Chapter 11 cases," 679 F.3d at 144, and in the course of its discussion, cited <u>Dever</u> with approval.  However, in that case, the liens were stripped through provisions of a chapter 11 plan.  Interestingly, <u>McDonald</u> originated as an adversary proceeding.  The Court of Appeals reversed an order of the bankruptcy court (affirmed by the district court) dismissing the debtor's adversary complaint.  In the adversary complaint, the debtor sought avoidance of the defendant's entirely undersecured claim.

Does <u>McDonald</u> represent an implicit endorsement of the view that chapter 13 debtors may invoke §506(d) to avoid an entirely undersecured lien by way of adversary proceeding or contested
(continued...)

**2.**

As stated earlier, unless avoided during the case, valid liens pass through a bankruptcy case unaffected. E.g., Estate of Lellock, 811 F.2d at 189. As a matter of common sense, for a lien to be avoided during the bankruptcy case, some action must take place – presumably the entry of a court order – that serves expressly or by operation of law to avoid the lien.

Here, if American General's lien was avoided during the Debtor's bankruptcy case, it must have occurred pursuant to the entry of the March 2001 Order in the Prior Adversary Proceeding. Certainly, the lien was not stripped through the Debtor's chapter 13 plan and the confirmation process, because no confirmation order was ever entered. Therefore, the actual issue is whether the March 2001 Order actually avoided the lien.[7] I conclude, as a matter of law, that it did not.

**3.**

When the March 2001 Order was entered, American General had filed a secured claim. By its plain language, the March 2001 Order speaks to claims classification and allowance, not

---

[6](...continued)
matter, independent of §§1322(b)(2) and §1325 and the plan process, like the decisions cited? It is hard to say. The issue was not discussed in the opinion, suggesting that the issue was not raised by the parties.

[7] For this reason, the question whether the confirmation process provides the exclusive procedural vehicle for lien stripping in chapter 13 cases, or whether liens may be avoided in chapter 13 cases via §506 adversary proceedings, is not presented here. The March 2001 Order was entered and was not appealed; it is final and is binding – even if it had been entered in error. See generally United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, __, 130 S. Ct. 1367, 1377 (2010) ("[a] judgment is not void . . . simply because it is or may have been erroneous" (quoting Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995))). So, as stated in the text, the question is whether the March 2001 Order avoided the lien and I do not have to opine further on the proper procedure for voiding undersecured liens in chapter 13 cases.

lien avoidance. It states only that the American General "claim" is "classified as a totally unsecured claim." Thus, on its face, the order purports to do nothing more than reclassify American General's secured claim as an unsecured claim, thereby permitting American General to share in the distribution under the proposed chapter 13 plan with the other general unsecured creditors holding allowed unsecured claims.

This plain reading of the March 2001 Order's text and the distinction drawn between claim classification and lien avoidance mirrors the distinction found in the provisions of the Bankruptcy Code. The reference in the March 2001 Order to the classification of the "claim" as "unsecured" evokes §506(a), not §506(d). By comparison, §506(d) speaks in terms of "liens" being "void" and nowhere does the March 2001 Order state that American General's lien is "void" or is "avoided."

If the March 2001 Order did not expressly avoid American General's lien, did the reclassification of the secured claim as an unsecured claim avoid the lien by operation of law? Again, the answer is "no."

There is ample precedent for the proposition that §506(d) is not "self-executing." Ryan, 2012 WL 4959632 , at *4; Pierce, 2012 WL 1903263 at *3; In re Webster, 287 B.R. 703, 709 (Bankr. N.D. Ohio 2002); see also In re J.H. Inv. Serv. Inc., 2010 WL 3943952, at *4 (M.D. Fla. Oct. 7, 2010) (bifurcation of claim under §506(a) is not "automatic," but requires further action by the parties and the court). In other words, while a textual, statutory argument exists that avoidance under §506(d) occurs "automatically" upon claim bifurcation under §506(a), the case law instructs that such a result is foreclosed in chapter 7 cases by Dewsnup and in reorganization cases by the core bankruptcy principle that, generally speaking, valid liens pass through

bankruptcy unless avoided. In short, some judicial action is necessary. "[M]erely because a mortgage lien may be amenable to being 'stripped' to the value of the security does not cause this result unless the Debtor takes affirmative steps during the pendency of the case to avoid such liens." In re Lindberg, 1988 WL 1015951, at *5 (Bankr. D.N.D. Aug. 2, 1988). But cf. In re Berkebile, 444 B.R. 326, 333 (Bankr. W.D. Pa. 2011) (avoidance of lien under §506(d) occurs by operation of law and entry of an order "memorializing the result" is "merely a ministerial act").

In this case, the required "affirmative steps" for avoidance of American General's lien simply did not take place.

I recognize that by filing the Prior Adversary Proceeding, the Debtor undoubtedly intended to obtain a §506(d) lien avoidance order. Indeed, the Debtor's complaint alleged that American General's security interest "is subject to avoidance," citing McDonald as supporting authority. (Springleaf Ex. 4, Complaint ¶6). The Debtor's (ultimately unconfirmed) chapter 13 plan, filed on November 22, 2000, just one (1) week before the filing of the adversary complaint in the Prior Adversary Proceeding, similarly expresses the Debtor's intentions. See Debtor's Chapter 13 Plan ¶ 3 ("the Debtor shall first file an adversary proceeding seeking to avoid the totally undersecured claim of American General Finance"). However, the order actually entered in the Prior Adversary Proceeding simply did not grant that relief.

By analogy, consider the following hypothetical. A chapter 7 debtor files a motion to avoid a judicial lien on property on the ground that the lien impairs an exemption to which the debtor would have been entitled. See 11 U.S.C. §522(f)(1). In the motion, the debtor alleges that he or she has claimed the property as exempt under 11 U.S.C. §522(b), that the respondent holds a judicial lien on the property and that the judicial lien impairs the exemption. If the exemption

15

was properly claimed and the lien impairs the exemption, it is unlikely that the respondent can come forward with any defense to the motion. Orders of this nature, with express language stating that the lien is "avoided" or "extinguished" are entered routinely without opposition in our bankruptcy courts. However, if the bankruptcy court were to enter an order that declared only that the respondent's lien "impairs an exemption to which the debtor would be entitled," would the order avoid the lien? I think not. An order that does no more than make the factual findings or state legal conclusions that constitute a predicate to further relief to which a party may be entitled does not actually grant that further relief. In this case, the March 2001 Order made the §506(a) finding, required by McDonald, that entitled the Debtor to further relief in the form of an order avoiding American General's lien. But, the order did not actually grant that additional relief.

**4.**

Before leaving this subject, it is fair to consider whether the March 2001 Order made sense or had any practical consequence or provided any benefit to the Debtor. After the entry of the order, American General held only an unsecured claim, yet its lien remained in place. Admittedly, it is hard to fathom the concept of an unsecured claim that is secured by a lien on property of the bankruptcy estate. Further, if the reclassification of American General's claim as unsecured had no practical consequence, perhaps one might interpret the order as, inartfully, having avoided American General's lien. But upon closer examination, it becomes clear that the order had a practical consequence and that it provided a benefit to the Debtor.

Whether intentionally or not, the Debtor employed the Prior Adversary Proceeding, in a

16

roundabout way, as one (1) step in a multi-step process that would have resulted in the avoidance American General's lien through her plan – had her plan been confirmed.

11 U.S.C. §1327(c) provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

For present purposes, the material phrase in §1327(c) is "provided for by the plan." If a debtor "provides for" a creditor's claim in the confirmed plan, §1327(c) explicitly states that the debtor's property revests free and clear of the creditor's interest (including a creditor's lien). Section 1327(c) rarely has this consequence with respect to secured claims whose validity the debtor has not successfully challenged prior to confirmation because one (1) of the conditions of confirmation under 11 U.S.C. §1325(a) is that the plan must provide that the holder of a secured claim provided for by the plan "retain the lien" until either it is paid in full or the discharge is entered. See 11 U.S.C. §1325(a)(5)(B)(i)(i).[8] Thus, to obtain confirmation of a plan that provides for a secured claim, a debtor must "provide otherwise" under §1327(c) (i.e., provide in the plan for a secured creditor to retain its lien, rather than having the property revest in the debtor free and clear of the lien). In addition, as a further limitation on the potential avoidance of liens by §1327(c), case law instructs that to be "provided for in a plan," the plan must clearly and accurately characterize the creditor's claim, make explicit provision for its treatment and give notice to the creditor if the claim is not fully protected. See, e.g., In re Deutchman, 192 F.3d 457,

---

[8] These requirements do not apply if the holder waives them by accepting a plan that does not include them or the debtor "surrenders" the secured property to the holder of the secured claim. See 11 U.S.C. §1325(a)(5)(A), (C).

17

461 (4th Cir. 1999); In re Crenshaw, 2012 WL 5430948, at *3 (Bankr. S.D. Ala. Nov. 5, 2012).

In this case, the Debtor provided for American General's lien in such a manner that, had her plan been confirmed, it appears that the Property would have vested free and clear pursuant to §1327(c).

In stating her intention to avoid American General's lien by adversary proceeding, the Debtor's chapter 13 plan advised American General that its lien would not be fully protected. See Plan ¶ 3. The Plan also expressly stated the Debtor's intention to provide for American General's claim as a general unsecured claim. Paragraph 4.E of the Debtor's chapter 13 plan classified as a Class Five claim, all claims not otherwise classified, "including those of purported secured creditors, whose claims will be reclassified as unsecured claims as a result of the planned adversary proceedings." (emphasis added). Paragraph 5 of the plan then provided for pro rata distribution to Class Five claimants. Clearly, the plan "provided for" American General's claim as an unsecured claim, dependent upon its classification as such through the contemplated adversary proceeding.

Thus, by obtaining the entry of the March 2001 Order, reclassifying American General's claim as a general unsecured claim, the Debtor implemented Paragraphs 3, 4.E and 5 of her proposed chapter 13 plan. Had she obtained confirmation of her plan, the Property would have vested back to her free and clear of American General's lien pursuant to §1327(c). However, her plan was never confirmed.

The relationship between the (perhaps unusual) terms of the March 2001 Order entered in the Prior Adversary Proceeding and the Debtor's chapter 13 plan lends further support to the conclusion that the March 2001 Order, standing alone, did not avoid American General's

18

mortgage lien on the Property. Whether or not the Debtor's relatively roundabout approach is the best procedure for stripping a lien in a chapter 13 case, it was the path she took. The approach was dependent upon obtaining confirmation of her chapter 13 plan – an event which never occurred.

## V. CONCLUSION

For the reasons set forth above, I conclude that American General's lien was not avoided during the chapter 13 phase of the Debtor's bankruptcy case. Furthermore, the Debtor does not suggest that after the chapter 13 case was converted, anything occurred during the pendency of the chapter 7 case that resulted in the avoidance of American General's mortgage lien. Therefore, American General's mortgage lien passed through the Debtor's bankruptcy case unaffected and Springleaf's demand for payment, as a means of enforcing the lien, did not run afoul of the §524(a)(2) discharge injunction. Springleaf is entitled to summary judgment in this adversary proceeding.

An appropriate order will be entered.

Date: February 6, 2013

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**